We'll hear argument next this morning in Case No. 15-1500, Lewis v. Clarke. Mr. Miller. Mr. Chief Justice, and may it please the Court, in an individual capacity action against a government employee, the plaintiff seeks relief from the employee personally. The judgment is not enforceable against the government. For that reason, such an action does not implicate sovereign immunity. This Court has repeatedly applied that principle to individual capacity actions against Federal and State employees, and it applies equally when the defendant is an employee of an Indian tribe. In advocating a contrary rule, Respondent takes the position that plaintiffs who have had no connection to an Indian tribe whatsoever, who are injured as a result of a tribal employee's negligence in carrying on a commercial activity miles away from a reservation, should have no remedy except whatever the tribe chooses to provide in tribal court. That position represents an extraordinary and unwarranted expansion of tribal immunity. Ginsburg. They say it's the same as if it were a Federal employee, then you would have the Westfall Act. If it was a State employee, you would have the same regime. And the tribe says, and we do the same thing. You can sue in our court, just as you could sue in the Federal court under the Westfall Act, Connecticut court under the Connecticut Act, and you can sue in our court. Well, and when a claim arises within the reservation that is subject to the tribe's legislative and adjudicatory jurisdiction, then the tribe has the authority to define how that claim shall be handled. But here we're talking about a claim that arose under Connecticut law from an accident on a Connecticut highway, not on the reservation, and the tribe does not have the authority to define the process for handling that claim. That's subject to Connecticut law. So the analogy, I think, that they're trying to draw is if you had an employee of one State who was involved in an accident in a different State, and there are a lot of reasons that situation isn't really analogous, but even taking it on its own terms, the forum State has jurisdiction over that case. The forum State can resolve that. It doesn't have to send the plaintiffs off to file in the State of the employee was from. So what the Respondent is asking for here is a sort of immunity, a sort of ability to control how the litigation proceeds that is unlike what any other State would enjoy. And in his briefing he said that there is one flaw there under our decision in Hyatt that Clark would have been entitled to the immunity that Connecticut gave its own officials. Well, there are a couple of antecedent questions there, Your Honor. I agree. So one, Hyatt is about the full faith and credit clause which applies to the State and not tribes. Hyatt is also about an action against a State agency and not an individual capacity action against a State employee. Sotomayor, you're absolutely true, we haven't extended Hyatt that far. But even granting both of those extensions of the decision, the rule in Hyatt is that the State cannot treat another State worse than it would treat itself. So if you applied the analogy here, you would say that Connecticut has a regime in which an action against a State employee is barred, but instead you sue the State directly. So applying that here, you would say, well, we can't sue Mr. Clark, so instead we get to sue the tribe. But the tribe doesn't want that, because the tribe is not willing to subject itself to jurisdiction in Connecticut. The tribe has not waived its sovereign immunity in Connecticut courts. So the tribe is not asking for application of that principle of Hyatt. It's asking for something quite a bit more. And it's what it is asking for is the authority to legislate for how litigation arising out of vehicle accidents off the reservation in the State of Connecticut shall be handled, and that's an authority. Kennedy, just so I understand the case, if this plaintiff had elected to sue in the tribal court, the rule would have been that there is indemnity from the tribe, and if negligence had been shown, then I assume there would be recovery against the tribe? Miller, I mean, we take the case on that assumption. Miller, yes. The tribe has a procedure, not identical to what's available in State court, and much more limited in some ways, but it does have a procedure that allows recovery against the tribe in tribal court, had the plaintiffs chosen to invoke that. Well, very limited, though, right? I mean, there's a significant cap on punitive damages. That's right. Punitive damages are not available at all. Non-economic damages are capped at twice the amount of actual damages, which is a cap that doesn't exist in Connecticut, either for actions against a private party or even for actions against the State. There's a much shorter or there's a shorter statute of limitations. It's only one year. There's no right to trial by jury. So there are a number of both procedural and substantive differences. That's correct, Your Honor. When there is a suit against an entity like the Port Authority of New York and New Jersey, and the question is whether that is really a suit, whether that is a suit against one of the States, and therefore subject to sovereign immunity, we would look to see who would pay the judgment.  Why wouldn't we do the same? Why should we not do the same thing when it is against an employee? When you have a State-created agency like the Port Authority, the Court looks at a number of factors to assess whether that agency should be treated as essentially the State or as some distinct entity. And you're right, one of the factors is financial responsibility. But the Court has never applied that analysis in assessing whether a natural person who is not a creation of State law. Kagan. Well, why shouldn't we? I mean, you suggest the difference is because this is a voluntary agreement. But why shouldn't it be the rule that if the State pays, we should understand it to be a suit against the State? Well, there are a couple of that would be inconsistent with a number of decisions. I think you're right, Mr. Miller. I think we would have to change our law to say something like that. I'm just asking, like, why wouldn't that be a sensible rule? Well, for one thing, it's not a sensible rule because immunity is a question that ought to be decided, as this Court has said many times, at the threshold of a litigation. You ought to be able to look at the pleadings and see is this suit against the State or is it against somebody other than the State. And if it is, immunity bars the suit and we don't proceed further. Indemnification is not always so easy to tell at the outset. The Tribal Code, for example, provides for indemnification except in cases of reckless conduct. In this case, we haven't alleged recklessness, but we also haven't had any discovery. And it may be that facts will emerge in the course of discovery that would establish that Mr. Clark had been reckless at the time of the accident. And then even on Respondent's theory, the indemnification obligation would disappear and so would immunity. Kagan. So those kinds of considerations haven't prevented us from looking to who's ultimately going to pay the bills in the kinds of cases that Justice Alito was talking about? Well, when you are talking about a State-created entity, you know, the State is itself an artificial legal construct and so there has to be some test for figuring out, you know, whether some other artificial legal construct is a different entity or the same entity. But that's just not how we think about it with real-life people who are not the State. They are necessarily something different. And if Respondent's theory that indemnification of the officer makes the officer the State, if that were right, then, as we noted in the brief, there are many States that by statute indemnify all of their employees, and 1983 damages actions against employees in any of those States would implicate the Eleventh Amendment. And this Court's decision in Hafer v. Millo would be you would have to go the other way in all of those States. And not only has this Court never held that, so far as we are aware, no court has ever even suggested that as a possibility. We also see the converse of this issue in this Court's decision in Regents, the University of California v. Doe, where the defendant was the University of California and it was an obligation from the Department of Energy, and the plaintiff said correctly, you know, the University does not face any real financial liability here. Whatever happens, the Federal Government is going to pay. But the Court nonetheless held that Eleventh Amendment's immunity still applies because the suit was won against the State. And so the crucial question, and that's what the Court said in Larson, the crucial question is whether the relief sought in a suit addressed to the officer is actually a relief against the sovereign. You look at what the relief is that's being sought and not the more difficult to determine question of where the economic loss might or might not ultimately fall at the end of all the proceedings. Alito, could a State give greater sought immunity to an Indian tribe than is available under Federal law? As a matter of State law, yes, a State could choose to do that. And the State can't. Alito, so the Connecticut Supreme Court could do that if it wanted to? Yes. I mean, we would urge it not to do so, and we would also argue that an argument for doing so in this case has not been preserved. But as a matter of State law, we don't see any impediment to the State choosing to do that. Suppose the driver of the vehicle was not working for the Indian tribe, but instead was an employee of a foreign embassy. In that case, am I right that the immunity, sovereign immunity, would stop the suit? No, Your Honor, it would not. So a suit against the individual employee. Yes. Who was driving a car. The test set out in the second restatement is that that would not be barred by official immunity. It certainly wouldn't be barred by sovereign immunity, either, because it's not a suit against the sovereign. Now, I have to say there aren't a lot of cases, certainly not recently, in which individual employees of foreign governments have been sued in this situation. And that's because in this situation you could sue the foreign government directly under the FSIA. In this case, if the foreign government were operating a casino in Connecticut, you could just sue them directly under the commercial activity exception. And if for some reason that didn't apply, the domestic tort exception, a tort committed in the United States by the foreign government is not subject to foreign sovereign immunity. So it is our understanding that you could sue the employee, and certainly you could sue the foreign government.  Kagan. Kagan. Kagan. Is it always the case that the plaintiff simply gets to choose whether it wants to proceed in an individual capacity or in an official capacity, or are there constraints at all on that choice? There are – the constraints are that in certain circumstances an official capacity suit is going to be barred by sovereign immunity. No, right. But in framing the complaint, it's up to the plaintiff to decide what relief he or she wants to seek and from whom. And that's really what defines the capacity in which the officer is being sued. But what about an Edelman v. Jordan type situation? I mean, if you name the individual who's in charge of dispersing the funds of the tribe and proceed just against the individual, it's still going to be regarded as a suit against the sovereign. Well, that's because in Edelman, I mean, I guess the fuller answer to the question would be that the plaintiff gets to choose, but the way they choose is by the relief that they're seeking, not just the label that they attach. So in Edelman, whatever the plaintiff may have chosen to call that, the relief that was sought was the payment of welfare benefits or disability benefits. Mr. Edelman didn't have the benefits personally and couldn't pay them personally. The relief that was sought was directing Mr. Edelman to use his authority as an officer of the State to pay the benefits out of the State treasury. And because the relief bound the State, that was an official capacity action. So it's defined by, it's not just a matter of labels, it's defined by the relief. Here, there's really no dispute that the relief that we are seeking is a payment of money damages from Mr. Clark personally. He's not the tribal treasurer. He doesn't have authority to make some payment on behalf of the tribe. We just want the money from him as an individual. Sotomayor, recognizing the broader description of the remedy sought analysis contained in Maxwell, that if the suit is seeking not just public funds, but affects the public administration or requires the tribe to do something, it's still? Yes. The test is, is the officer being compelled to do something on behalf of the tribe, or is he being compelled to do something just as a private person who happens to be an employee of the tribe? It turns on that question, not, as the Connecticut Supreme Court thought, the question of in what capacity was he acting at the time of the events that gave rise to the litigation. What do you think, maybe you're going to get to this, but what do you think of the official immunity idea that the government puts forward? Well, the first thing we think about that is that it's not before the Court. The question presented as stated both in the petition and in Respondent's brief in opposition referred only to sovereign immunity. The only issue that was addressed below was sovereign immunity. The only argument that was made below was sovereign immunity. And indeed, Respondent's argument below was essentially that what he said to the Connecticut Supreme Court was, they're really suing the tribe, they're not really suing me, this is just a trick of pleading. So that's an argument that not only is not an official immunity argument, it's really inconsistent with the idea of an immunity that would apply in a judicial suit. So you think it was waived? Was that argument waived? We do, at least for purposes of this appeal, this is an interlocutory appeal from a motion to dismiss. We don't, you know, if it is, when it's ultimately remanded to the trial court, there will be further proceedings, discovery, the opportunity for a motion for summary judgment. We're not taking the position that it's necessarily foreclosed for all time. But in the course of this appeal, it certainly has not been preserved. And it's not just a nicety of this Court's Rule 14.1. There's a solid practical reason for the Court not to address the issue here, and that is that whatever one thinks of the merits of the argument, there are certainly a lot of difficult, novel questions raised by the official immunity issues here. This Court, were it to resolve them, would be the first court to do so, not just in the course of this litigation, but on many of these questions, the first court anywhere ever, and we would suggest that that's not an appropriate exercise of this Court's discretion. Kennedy, I suppose that's correct, and I was going to ask you, you responded to an earlier question and indicated that the State could expand the immunity of the Indian tribe. And I was going to ask you, is there any authority for that? That's a troublesome concept for me. But again, I don't think that's before. Is that all going to happen below? Miller, that's why the State hasn't attempted to do so. Kennedy, before am I right about that? We don't need to address this? Miller, you don't. The State has not tried to do that. We will urge it not to. Ginsburg, it was a suggestion in the government's brief that Connecticut might afford some kind of comedy. Miller, yes. And the State, you know, the exact scope of that is not presented here, because no one's tried to do it yet. But the State may have some discretion as a matter of comedy to defer to tribal court procedures and to tribal law beyond what Federal law or the Federal Constitution requires, but it hasn't sought to do so, and so that's not presented here. If there are no further questions, I'd like to reserve the remainder of my time. Roberts. Thank you, Mr. Miller. Ms. O'Connell. Mr. Chief Justice, and may it please the Court. Petitioner's suit is a personal capacity suit against an individual tribal employee, and the tribe's sovereign immunity is therefore not implicated. The Connecticut Supreme Court reached the opposite conclusion by holding that a tribe's sovereign immunity extends to any of its employees acting within the scope of his employment, even if the plaintiff seeks damages against that employee personally. That holding is contrary to the settled rule that distinguishing between a personal capacity suit and an official capacity suit depends on the capacity in which the employee is sued, not the capacity in which he acted when he inflicted the alleged harm. It particularly makes sense that tribal sovereign immunity wouldn't apply here because there's a coordinate doctrine of official immunity that applies in personal capacity suits. And we think official immunity does, as a matter of Federal common law, apply to tribal employees that it should extend to the scope of the Federal common law. Sotomayor, did we reach that question? We don't think the Court should reach the question in this case. We've briefed both tribal sovereign immunity and official immunity, so the Court has the whole scope of how immunity defenses should operate in a case like this. And we certainly wanted the Court to be aware of our views on official immunity. We wouldn't want the Court to write anything in its opinion about tribal sovereign immunity that would preclude a defense of official immunity from being raised in this case or by other tribal employees sued in the future. But the Connecticut Supreme Court decided this question as a matter of tribal sovereign immunity, and that's the question before the Court. So we think it's appropriate for the Court to decide the tribal sovereign immunity question and remand to the Connecticut Supreme Court, which could address official immunity to the extent that it would. Sotomayor, what would we write that you think would affect official immunity? As I was reading your brief, I was trying to figure that out. Because we're basically announcing a rule that in individual capacity suits, sovereign immunity is not implicated unless the remedy sought implicates the tribe directly. What else could we write that would preclude official immunity? Well, I think, Justice Sotomayor, these, as you can tell from the Connecticut Supreme Court's decision in this case and the cases cited therein, these two concepts are often confused or conflated with one another in lower courts. And so we just wanted to be absolutely clear what we think the United States' view is on each of those separate questions so that the Court, you know, so that the Court wouldn't write anything in a tribal sovereign immunity opinion that would affect official immunity. Kagan. Do you think that might have happened here in the court below in the Connecticut courts, that those two concepts were confused? The Connecticut Supreme Court, we think when you read the opinion, they've definitely decided this case is a matter of tribal sovereign immunity. I think the mistake that litigants in courts often make is to say that if a tort was committed in the employee's official capacity, it's an official capacity suit and it's barred by sovereign immunity. But the Court has repeatedly explained that's not the right way to go about it. If you're suing the employee in his personal capacity for damages against him, the immunity of his sovereign employer is not implicated. It's possible that this issue could still be decided on remand. That would be an issue of Connecticut State law to determine whether an official immunity defense has already been raised by citing cases that conflate the concepts, or maybe there's still an opportunity for the Respondent to raise that as a matter of State law. Alito, on the facts of this case, is there any argument in favor of official immunity? Mr. Clark is not a member of the tribe. He's driving a limo on I-95, transporting gamblers, and he rear-ends Mr. Lewis, who is not a member of the tribe. Do you think there's any argument in favor of sovereign immunity for Mr. Clark under the facts of this case? For official immunity, based on the facts as you've described them and as I understand them, no. Driving is a quintessential activity that involves no policymaking authority. I think the Federal Drivers Act shows that, and cases of this Court show that. I would stress that this Court, the case was dismissed at the most preliminary stages, so the Respondent hasn't had an opportunity to develop any kind of an official immunity argument. I suppose there could be some reason that he could give why he would be authorized to drive in a way that would otherwise be reckless, maybe like a medical emergency or something. We just, I don't know that anything like that was happening as far as I understand it. This was a typical traffic accident where a car was rear-ended, and in such a case there would be no entitlement to official immunity. Sotomayor, Mr. Clark is arguing that if you're going to go back to the common law official immunity doctrine, that covered, as our Westfall case indicated, even nondiscretionary acts, that it covered every act. What's your position on that? Westfall said the opposite. So the case they're looking to is Barr v. Mateo. I'm sorry, I confused the case. But in Westfall, the Court said that view of what the Federal common law provided was a mistaken reading of Barr v. Mateo. And it's this Court that tells us what the Federal common law is. In Westfall, the Court described that as an immunity only for discretionary decision-making functions on behalf of sovereign employees, but not for anything else. Kennedy, I thought your brief was helpful and quite correct on explaining the basis for sovereign immunity and the difference between official immunity. But then at the very end you indicate, well, maybe Connecticut can expand this as a matter of State law. Is there authority for the proposition that a State can expand the immunity of an Indian tribe? Yes. I think as a matter of the State law. What case do I redefine that? It would be a matter of State law. They would not be. What case can I redefine that? I don't know of a case that specifically says that. It seems to me a far-reaching proposition to say that this extent of tribal immunity is a matter of State law. It is a matter of Federal law. The State wouldn't be amending the Federal law by, as a matter of comity, expanding a greater protection to an Indian tribe. An example might be if in this case Connecticut took a look at the facts and the Court has said, well, we offer complete immunity to our employees in this circumstance and so does the tribe, and the tribe has set up its own system. We're going to defer to that system and give this employee complete immunity in this case, even though the Federal common law would afford him less, as a matter of comity. Well, I think that's a difficult proposition, but again, we need not reach it here. I think that's correct. Well, one reason it might be a difficult proposition is that the Court has suggested several times that there is some uneasiness with the doctrine of applying sovereign immunity to tribal entities at all. Does the government have a position on that? Well, we think it's settled at this point that tribal sovereign immunity is an issue of Federal law, that it applies to commercial activities, including off-reservation commercial activities. The Court suggested in Bay Mills that there may be an exception to tribal sovereign immunity if there were some circumstance in which, like a tort victim or a person with no connection to the tribe, which is the Petitioners here, had no remedy for their injuries because of tribal sovereign immunity. We don't think those circumstances have come to pass here. Of course, there's a remedy in tribal court, or at least there was. There was a question about whether it's barred by a statute of limitations. But also, this suit, a personal capacity suit against the driver of the vehicle, is a way that they could potentially recover for their injuries without suing the tribe. But tribal sovereign immunity has generally, it is understood to be a matter of Federal law. It arises from the United States' recognition of Indian tribes. And so because it's an attribute of sovereignty to have not only sovereign immunity, but official immunity as a matter of Federal law, tribal employees should be entitled to such an immunity as well. If the Court does get into the issue of foreign sovereigns, we would just like to note that it's our view that foreign officials are entitled to complete immunity in United States courts. You could sue the foreign sovereign under the Foreign Sovereign Immunities Act, and in this case you would be able to, but we've explained in a couple of different footnotes in our briefs that. Ginsburg.  Yes. I asked, suppose everything was the same except that it was a vehicle belonging to a foreign embassy, driven by an employee of that embassy. Yes. You say that employee would have. That's correct. Under the law that applies to foreign States and foreign officials, some foreign officials are entitled to complete immunity. The others are entitled to an official immunity that extends to any acts taken in the scope of their official duties, not just to discretionary ones. So the driver would be immune under the law applicable to foreign drivers. And the only suit would be against the sovereign nation itself. That's correct. If there are no further questions. Thank you. Thank you, counsel. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. As Justice Ginsburg noted, the Mohegan Tribe is asking for the same protections from suit that every other sovereign enjoys. If Clark were a Federal employee, a foreign employee, or a Connecticut State one, this suit would be barred. There's no reason the rule should be different for tribes, and indeed, for the last 50 years, it hasn't been, ever since the Davis decision in 1968. Lower courts have given tribal employees a broad immunity from tort liability until the Ninth Circuit recently reversed course. Petitioners are asking this Court to strip tribal employees of that longstanding immunity based on three technicalities. First, they're saying that the plaintiff shouldn't be able to plead around immunity by putting the words individual capacity in the caption of their complaint. But the Court's jurisprudence is more nuanced than that. It looks to rather the real party in interest and whether a judgment will in substance and effect run against the tribe. If it does, then it's a suit against the sovereign, and immunity should attach regardless of the complaint's form. Well, what would happen in all the 1983 actions or all the Bivens actions if there was an agreement by the government employee, employer, to indemnify the individual? Easy, Justice Alito, and that was my friend's answer to the kind of dangerous scenario that would unfold. But those are very easy because it's ex parte young, and this Court's decision in Schauer v. Rhodes say those are circumstances in which the State official is acting ultra-virus by violating the Federal Constitution. And so all of those 1983 suits would still proceed. So we're saying that the kind of the best way to understand this case, this Court hasn't really decided the question of what is the effect of an indemnification agreement on State employees. But it has said so, as you were saying in response to my friend, the State instrumentality cases, cases like Hess, which look to whether or not the instrumentality is under the control of the sovereign and who's ultimately responsible in practical effect for the judgment. And those two questions, if you ask them here, are answered affirmatively in favor of the Tribe. Breyer. I thought you could sue somebody. I may have it totally wrong. I thought, suppose that in Georgia there is some people who are drivers for the State and they go out and have an auto accident. I thought you could sue the individual. You can't? In Georgia? In Georgia? Just take any State. I'm using that as an example. States have a lot of people driving, and one goes out on the road and gets into an auto accident. I thought that you could sue the individual driver. In general, you cannot. So Connecticut is a very good example, so they have a statute. You mean you cannot because of the State law? Correct. Oh, they pass a statute or they have a State law. Correct. And if it's a State law. So what is our argument? We're deciding this as a matter of what? As a matter of the Federal Constitution, aren't we? Federal common law, I think, is the best way of understanding it. Common law under the Indian Tribe being a domestic nation. Correct. All right. So are there States that do allow you to sue somebody who rear-ends you? I'm not aware of any State that does so. Certainly, in response to Justice Alito's question, to the extent there was some Federal cause of action or something, that would supersede. Well, wouldn't that have been the Connecticut law, but for its Westfall Act type? I mean, the Westfall Act changed it. Before that, it was my understanding that the employee, the driver, you could bring an individual suit against the driver. That's what the law was under the Westfall, the Irvin decision, and then Congress changed it. But before that, you could bring an individual suit. You couldn't, actually, Justice Ginsburg, because the Federal Drivers Act in 1961 forbade that. And so that was the case. Well, let's go back before there was legislation that changed it. Correct. But under the ordinary law, the employee was you could sue the employee in a personal capacity. Certainly before 1959, I think that's right. But as our brief explains, after Barr v. Mateo, lower court after lower court said that official immunity extends to nondiscretionary functions. And in the Westfall decision, to be sure, Justice Ginsburg, this Court said that it was limited to discretionary functions, but Congress quickly repudiated that and said that the Court got it actually wrong. Well, but that's a congressional act. You're asking us, in effect, to do what the Congress had to do in Westfall. And you begin by saying, oh, this is a pleading maneuver, which is, I think, a demeaning professional comment. And all they were doing is following the rules that were very clearly explained in the government's brief and in the Petitioner's brief, that there's a difference between sovereign immunity and official immunity. That's the difference. Justice Kennedy. You want to say that it should be elided because of the tribe's indemnification agreement? And you want to do, in effect, you want us to do is to pass a little Westfall act up here. Justice Kennedy, three responses. First of all, we certainly didn't mean to derive them professionally or otherwise. We're picking up on this Court's own language and saying that it's the substance that controls the forum, which it's used in many of the immunity cases. Second, on response to the question about whether we're asking this Court to do Congress's work for it, no, we're actually asking this Court to do no more than what it's done in the foreign tort for the Federal Tort Claims Act cases like Boyle, for example. Justice Kennedy, the very argument that you made was made by the dissent by Justice Kagan that just because the text of the act doesn't cover Federal contractors, and even though the Federal contractor lobbied Congress for actually an extension to the act for the immunity, what this Court said is our job as a court in interpreting Federal common law is to look to the wisdom embodied in statutes, and just because Congress didn't connect the dots and apply the law to Federal contractors, it only applied to Federal employees, the Court said that's what we should do here. And cases like Willis in 1966 say the same thing, which is it's the job of the court to try and look to the wisdom embodied in statutes. Breyer, but my understanding, which Justice Ginsburg said, is that basically the Westfall Act is a complicated act that basically, if you're rear-ended by a postal employee, you can sue the government of the United States. So a person who's the victim of an accident has recourse. Now, my guess would be that States do something similar, because it seems to me very odd that if I'm rear-ended or run over by some kind of State car which has a State driver, that there's no remedy at all. There is a remedy. I'm sorry if I misspoke, but absolutely you'd have a remedy against the State itself, just not against the employee. Okay. But here what we have is there is no remedy against the tribe. And that's why I thought it would be odd to say there's no remedy at all. And therefore, the basic principle seemed to be that you could sue the employee, but not the State. And then they changed that through legislation. So, Justice Breyer, we think that that's absolutely not true. That is, there is a remedy against the tribe. The tribe has expressly waived its sovereign immunity. Well, that's entirely contingent. It might be true in this case, but it doesn't have to be true. Another tribe could say, no, we don't feel like stepping in. That's absolutely right. But I think the important point in what our brief says and what the NACI brief, joined by Texas and four other States representing, you know, a bunch of tribes, is that the way to deal with that is the compact process. That is, and this goes to your question earlier, Justice Kennedy, about whether States have protections in this area. The remedy, the parade of hypotheticals is dealt with by the fact that you can't actually, we couldn't even gamble in Connecticut, couldn't set up this operation without Connecticut first agreeing in a compact, voluntarily, to having this. And in the course of that compact, they said, criminal jurisdiction, State, we get, we're going to still retain it. But with respect to civil jurisdiction, they said, this tribe, you set up your own tribal court system. And so this exactly was a problem with that argument is that it's, it seems to suggest that the State's motive will be to provide protection for somebody like Mr. Clark. But the State of Connecticut has a very strong incentive to be solicitous of the interests of the Mohegan tribe because the State gets an enormous amount of revenue from this  Isn't that true? Katyal, I understand the point, but I think that's true generally in law. That is, we rely on the State to make its own prerogatives and choices. So, for example, the State could decide not to have tort claims at all if they wanted to, not just against tribes, but against anyone, if they wanted to incentivize businesses in one way or another. I don't think this Court gets into that. Rather, I think the question, and as our brief shows, State after State have actually done the reverse, Justice Alito. Seventeen different States have compacts that do things like channel this litigation into State courts instead of tribal courts. The New Mexico example at page 53 of our brief is a good example. Indeed, Justice Alito, in Connecticut itself, Foxwood Casino, which is run by the Pequot tribe, has the following statute. Quote, ''Any person injured through the negligence of any Pequot tribal employee while acting within the scope of his employment and while operating a motor vehicle shall have a right of action.'' The tribe hereby expressly waived its immunity from suit for such claims, provided such suit is brought in the courts of the State of Connecticut. That's the way to deal with this, which is if a State's concerned about, you know, about tribal courts or anything like that, they can do what many States have done, which is say, hey, if you want to have gaming operations in our State, you've got to first say and agree to waive sovereign immunity in State court. That's not what they did here, and now they're seeking to try and relitigate the terms. Sotomayor, that wouldn't help Mr. Lewis, because, well, it would help him. He could sue the tribe, but he wants to sue Mr. Clark. And so if the tribes waive sovereign immunity, why shouldn't the individual? Katyal, Justice Sotomayor, before the lawsuit was brought, there was a pre-existing statute of the tribe that says that they fully indemnify Mr. Clark. They pay all of the expenses and pay any judgment that was rendered against him. So anything in substance and effect. Sotomayor, so your sovereign immunity argument relies solely on that indemnification? Katyal, Justice Sotomayor, correct. If there were no indemnification agreement or anything like that. Breyer, indemnification in the Bivens actions, you say, oh, those are constitutional actions. I thought 1983 says violation of the law of the Constitution or laws of the United States. Katyal, Justice Sotomayor, correct. Breyer, I don't think they are all constitutional. Katyal, Justice Sotomayor, correct. If it's a State, it would be also ultra-virus, and the same thing would be true here. That is, if the Federal government passed some law that, you know, provided a tort, you know, our argument does not extend to that. It only extends to a clash between State law and the law of the tribe. So. Is there any court that has held that an indemnification agreement, an agreement to indemnify the employee extends sovereign immunity to that employee? So this Court hasn't reached that question. In the lower courts, I think, have basically said, for example, the Medicare cases at page 19 of our brief are good examples, the Blue Cross. So Blue Cross is administering a Federal program, and they, in the course of doing so, they get sued. And the question that those cases are grappling with is who is the real party in interest? Does Blue Cross get Federal, get sovereign immunity? And the answer that those courts give is yes. So we think you could look to those, Justice Ginsburg, as well as looking to the indemnification cases, as I was saying to Justice Li, the instrumentality cases, as I was saying to Justice Alito. Ginsburg. I think we have that question in other contexts. There's somebody you couldn't have an indemnity agreement that would count, let's say, for diversity of citizenship. It would only be the parties. You couldn't the indemnity agreement. The party that indemnifies is not a necessary party under Rule 19. So we haven't considered the real party in interest to be the one who provides  Katyalinikas To be sure, Justice Ginsburg, in Joinder and things like that, I think that's right. But I don't think that is – those are private party litigation cases. I think if this Court's asking for what's the best analogy to this situation here, which is a sovereign immunity situation, I think the instrumentality of these cases are quite a bit closer than the ones like Joinder and the like, which don't have anything to do with immunity at all. In case after case, starting with Ford Motor, this Court has been asking the question, who is the real party in interest for purposes of sovereign immunity? Here, the real party in interest, this is not, you know, some sort of lawyer – you know, we're not being – trying to denigrate them, but the fact is, in practical effect, the judgment here is against the tribe. There was a statute of the tribe that said, we're responsible for all the costs, all the judgment, and so on. And yes, Justice Sotomayor, they might say they want to sue Clark, but in practical effect, they're not suing Clark. Breyer. So how do we deal with this? Every tribe passes this. You say, great, indemnify everybody. You'll never have to pay, because as soon as you do that, nobody can sue you. And so, therefore, the tribe is totally immune from the most ordinary accidents taking place off the reservation, and the victim of, now, these missiles being sent out from the reservation, because they run over people, and there's no remedy at all. Now, that seems to me pushing the notion of tribal sovereign immunity off the reservation into a place where there are just no remedies for victims at all. Now, what is the answer to that? The answer to that is in our brief. That's exactly right, Justice Breyer, that to the extent a tribe is kind of creating a shell game and saying, oh, we're going to indemnify these people, but then not pay the judgment or assert sovereign immunity, akin to some of the hypotheticals in the first hour of the argument, the last case that you were hearing, absolutely, those are cases in which lower court after lower court, like the Ninth Circuit, have said, oh, that's a situation which sovereign immunity doesn't apply. Now, you've said here, well, the fact that it's commercial or off-reservation matters, and that's something that Mr. Miller said. You know, below, they, of course, didn't say that. That's what the Connecticut Supreme Court said at Petition Appendix page 10, that they never made those types of arguments. But to the extent that they're troubling the Court, I think the answer is what this Court has said in Bay Mills and Kiowa, which is tribal immunity is different in that respect than maybe some other types of immunity. That is, it does extend to commercial off-reservation activity. There are longstanding reasons for that having to do with the fiscal base of tribes and other things like that. This Court – I don't think they're asking this Court to try and re-litigate Bay Mills or Kiowa. You've decided it squarely twice. An argument, I think, flows very naturally from that. Justice Kennedy, there was a third thing I wanted to say in response to your long question before, which is you had said that – and this is something that the other side had said – that the lower court had relied only on sovereign immunity and not on official immunity. I don't think that that's quite right. I think that the lower court here, the Connecticut Supreme Court, relied on – basically conflated both doctrines. And there's a – I think, you know, that's the way Connecticut courts have done this. Indeed, there is no official immunity case about tribes in Connecticut courts that we have been able to find, except for one mention in an unpublished opinion in the case called for. Sotomayor, so why did you do it in your question presented? Presumably, you're – We certainly should have – the brief in opposition, there's no doubt, Justice Sotomayor, should have been clear on this. Well, your opening brief on page 22, 23 says we're not claiming any personal immunity. You know the difference. I think – I think that we did say – It's very official and – In the – in the brief in opposition at page 1, we did say that if this – that the employee cases and the statutory cases support our position, as well as at pages 14 and 15 of that – of the – and 22 and 23 of that brief. And I do think that that follows naturally from the way the Connecticut courts have understood this, which is to conflate both doctrines together, official immunity and tribal immunity. Sotomayor, so why don't we un-conflate them, set them back and tell them, answer the two doctrines differently, because we've always treated them differently. Right. So we don't have a problem with that. The one, I guess, concern I'd have about that is exactly what Ms. O'Connell just said a few moments ago, which is she said that – that the reason why she said, quote, it makes sense that tribal sovereign immunity does not apply because official immunity does. And if you take that view, that the reason why tribal sovereign immunity doesn't apply is because of official immunity being here, then I think you would have to get into that question. We certainly think you should, because we think for 50 years, starting with the Davis decision in 1968, Federal courts have recognized immunity. Sometimes they call it tribal sovereign immunity. Sometimes they call it official immunity. Sometimes they call it sovereign immunity. It doesn't actually matter here. It does matter absolutely, Justice Sotomayor, in the State context what label you put on it, because if it's sovereign immunity, Congress can't abrogate it. They have Eleventh Amendment protections. But that's not true with respect to tribes. That is, Congress's power is plenary whether you call it official immunity or sovereign immunity. And so for that reason, we think the Court should get into it here and – and affirm what I think courts have done. Ginsburg. So Congress could have enacted a Westfall Act covering tribes, but it didn't. Correct, Justice Ginsburg. That's exactly the argument this Court rejected in Boyle and Justice Scalia's opinion, which is Congress was lobbied to extend the Federal – the Federal Tort Claims Act exception to Federal contractors. They didn't. This Court, then, did exactly that. And as this Court has said in Willis, quote, if there's a Federal statute dealing with the general subject, it's a prime repository of Federal policy and a starting point for Federal common law. So Federal common law works differently than the kind of expressio unius reading that I think the other side – and that's embodied in the premise to your question. I think the question for this Court in answering Federal common law is – in asking a Federal common law question is, what is Congress's judgment in this area? And if they can identify some distinction between a tribal driver and a Federal driver or something like that, absolutely, that's a fair – that's fair game. Ginsburg. The Federal driver never had common law immunity. It has under the Westfall Act statutory immunity, but it didn't – the drivers didn't have common law immunity. They didn't before 1961, as I was – as I was saying. But I do think the unbroken tradition of the lower courts, after Barr v. Mateo in 1959, is to give low-level employees, nondiscretionary employees, Federal common law immunity. But we said that was wrong. In Westfall, we said that Barr applies to defamation and kindred torts, not negligent driving. Correct. You did, and you also invited Congress because you said, look, we're not sure about this, and we – Congress, we'd like you to act. And then Congress did act. And when Congress acted, they dramatically repudiated the notion that in common law – They repudiated. They could have said, yes, the Court got the law right, what it was, but we think the law should be changed, and not necessarily repudiating this Court's reading of what the common law was. I think that's actually in the findings itself, Justice Ginsburg, of the Act as well as the House report. It's also in Justice Breyer's concurrence in O'Haley v. Osborne in 1988, which we quote, because there Justice Breyer said that employees had, quote, received an immunity that applied to nondiscretionary as well as discretionary actions before the Westfall decision and enacted the Westfall Act to, quote, maintain the scope of that pre-Westfall immunity. And so – But why should – why should a tribal employee driving a limo be entitled to official immunity? You say that the purpose of official immunity is to protect, quote, the fearless, vigorous, and effective administration of policies of government. But you want to have – you want to encourage limo drivers on I-95 to be fearless in the way they drive? Well, I think the first point is that their argument is so sweeping. It extends not just to drivers. It extends to tribal judges. It extends to tribal prosecutors. And, yes, it extends even to drivers of emergency vehicles. The Ninth Circuit and Tenth Circuit amicus brief talks about police and fire and all sorts of tribal things, in which you actually would, Justice Alito, for sure, I think, want them to be fearless in saving people's lives and things like that. And, yes, there are times, there are rough edges to any immunity doctrine in which you can say, well, in this case, how is that policy being served? I mean, take this Court's decision in Imbler v. Pacman, which had the, you know, grossest facts imaginable, you know, a state prosecutor who's fabricating evidence, but this Court said unanimously that that person was absolutely immune. So, I agree that there are going to be some of those cases, but I think the logic of all of the pre-Westfall decisions, as well as the Westfall Act, is to say, we're not getting into that, about, you know, as long as the person is a Federal employee, then they have official immunity. And here, as long as the person's a Tribal employee, and as long as it is because the State of Connecticut does have a remedy against any sort of concerns, so if they were concerned about your situation about fearless driving, they can do and negotiate in the compact, as New Mexico has done, for something else, and say, look, we want this channeled into State court, we insist that you waive immunity. There are a host of remedies that are available to States in this circumstance, and, indeed, Connecticut availed themselves of them in this compact. And now what these folks are asking for is to renegotiate that compact and ask for something up in and beyond what the State of Connecticut has provided. Are there no further questions? Roberts, Mr. Miller, seven minutes. Miller, thank you. On the question of official immunity, we've already discussed the reasons why it's not part of the case before this Court, but I'd like to add that this case is a particularly bad vehicle with which to consider the — in which to consider the question of official immunity. As has been discussed, in order to craft an immunity rule that would reach the facts of this case, it would be something far beyond what the common law has recognized. This is a case that involves negligent driving of a car. That's the canonical example of a nondiscretionary, non-policymaking tort. It also arises from off-reservation commercial activity of a tribe, and it's a tort action from that. And we are not suggesting, we are not asking the Court to revisit Baymills, but in footnote 8 of Baymills, the Court noted that there is at least some question as to whether the tribe even has sovereign immunity in that context. And again, you don't need to resolve that question here, but that's an additional reason to be cautious before reaching out and creating a very broad rule of official immunity in these circumstances. That leaves the question of indemnification and whether indemnification somehow changes the sovereign immunity analysis. The Respondent suggests that the judgment here would somehow bind the tribe.  It's not a judgment that binds the Mohegan tribe because of the tribe's sovereign immunity. The Connecticut Supreme Court judgment will not do that. The Connecticut Supreme Court judgment will bind Mr. Clark separately. The tribe may have agreed to indemnify him. And that doesn't change the analysis because, as you pointed out, Justice Ginsburg, the Court doesn't normally look at indemnification in figuring out who the real parties and interests are, in the diversity context, in the 1983 context. Respondent's answer to 1983 is to say, well, that's different because of Ex parte Young. But this Court has said that Ex parte Young does not authorize the relief of retrospective awards of damages. So, you know, if Respondent were right and indemnification converted the action against the employee into one against the State, then even under Young it wouldn't be permissible. Kagan. Do you think, Mr. Miller, that there's any decision that precludes us from saying that we're going to treat this as sovereign immunity or not sovereign immunity depending on an indemnification agreement? Miller. There's no case that directly precludes you from saying that. It would be very difficult to reconcile with the analysis in Regents of the University of California against Doe. And it would also, I think, a holding to that effect, you know, would be in tension with all of the cases, you know, all the 1983 cases from States that indemnify their employees that have assumed the absence of sovereign immunity. It would also be in considerable tension with the analysis in diversity cases and Rule 19 cases. But there's nothing directly on point that would say you can't do that. Finally, as you pointed out, Justice Breyer, allowing indemnification to create sovereign immunity here would have the very strange consequence that by allowing the tribe to come in and say, well, the action against the employee is really against us, we're going to have to pay, therefore immunity applies. But now that immunity applies, we don't have to pay, and it allows the liability to simply disappear. Breyer. Well, I think his argument, I mean, he may not. I don't want to saddle him with this. But the common, it's Federal common law, the sovereign immunity idea. And where a tribe looks, so let's look at what the statutes do. And we see every State and the Federal Government don't let you bring a suit against the employee and make the employee pay for an automobile accident. Rather, they offer some other remedy. You go against the State, for example, under the Westfall Act. You go against the Federal Government. And so by analogy, where the tribe is in fact going to pay, and also offers a remedy, then by analogy, that latter part being important, then by analogy the Federal common law should be shaped to reflect. I think that's basically the kind of thought that he's, your opponent here, is trying to put in my head. Yes, and there are two answers to that. The first is that as a factual matter, in fact, not every State bars actions against individual employees. There are a number of States that allow them, and then they indemnify the employee, but you can sue the employee in his own name. The more fundamental problem with that argument from Respondent is that, you know, the tribe may choose as a matter of grace to provide a remedy in its court, but this is a traffic accident on a public highway in Connecticut. And the victims of that accident, the Petitioners, had a right under Connecticut law to get redress from the negligent party, and they had a right to go to a Connecticut court to seek that redress. And the tribe, you know, can pass a statute, but the tribe does not have the authority to reach out into the State of Connecticut and take away Petitioners' State law right from them. If there are no further questions, we ask that the judgment be reversed. Thank you, Counsel. The case is submitted.